# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOHN F. GREEN,**

                **Plaintiff,**

        **v.**                                          **Case No. 19-CV-528**

**ANDREW M. SAUL,**

                **Defendant.**

## DECISION AND ORDER

**1. Introduction**

John F. Green alleges he has been disabled since August 26, 2015 due to chronic low back pain. After his application for disability insurance benefits was denied initially and on reconsideration, a hearing was held before an administrative law judge (ALJ).

**2. ALJ's Decision**

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity since his alleged onset date. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Green had not engaged in substantial

gainful activity at any point from his alleged onset date through December 31, 2016, his date last insured. (Tr. 24.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic activities. 20 C.F.R. § 404.1522(a). The ALJ found that Green suffered from post laminectomy syndrome, which was a severe impairment. (Tr. 24) However, his diabetes, hypertension, depression, and anxiety were not severe impairments. (Tr. 24-25.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "The Listings"), 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month duration requirement, 20 C.F.R. § 404.1505(a), the claimant is disabled. 20 C.F.R. § 404.1520(d). The ALJ concluded that Green's impairments did not meet or medically equal a Listing. (Tr. 26.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20

C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ found that Green

> had the residual functional capacity to perform light work … except the claimant can occasionally climb ramps or stairs but can never climb ladders, ropes or scaffolds. The claimant can frequently balance. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant must avoid all exposure to hazards such as unprotected heights and moving mechanical parts. He must be permitted to change positions between sitting and standing every 30 minutes. The claimant can frequently handle and finger with the bilateral upper extremity.

(Tr. 26.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Green could not perform his past relevant work. (Tr. 29.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The ALJ found that there were jobs that existed in significant numbers in the national economy that Green

could perform, specifically, mail clerk, clerical assistant, or "marker"[1]. (Tr. 30.) Therefore, he was not disabled.

The ALJ's decision became the final decision of the Commissioner when the appeals council denied review. (Tr. 10-12.) This action followed.

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's]

---

[1] The ALJ's decision identifies the position "marker" with the DOT number 609.587-034. There is no such entry in the Dictionary of Occupational Titles. A review of the transcript of the vocational expert's testimony reveals that the DOT number is actually 209.587-034, which corresponds to the following description: "Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. [M]ay record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies."

4

decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

4. **Analysis**

   a. **Symptom Severity**

An ALJ must engage in a two-step process to evaluate a claimant's symptoms. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work related activities…." SSR 16-3p. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ must also consider, to the extent they are relevant, the following factors:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ stated:

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Tr. 27.) She explained: "The objective medical evidence and the claimant's course of treatment during the relevant period did not generally support the extent of his allegations. These factors also showed he is no more limited than the above range of light work." (Tr. 27.) She characterized his impairments as "minor deficits" and his treatment as "conservative." (Tr. 27.) She noted that he had plateaued in physical therapy, had physical exams with "only minimal tenderness to palpation, with no pain behavior, a normal gait and normal range of motion," "was given more conservative treatment modalities such as ice and range of motion exercises," "pain medication continued to work well with no intolerable side effects," and "he tried to get out of his house every day to walk his dog." (Tr. 27.)

However, amidst this discussion, the ALJ also included facts that seem to undercut her conclusion, including the fact that other examinations revealed decreased range of motion, an antalgic gait, and that he required injection therapy. (Tr. 27.) The ALJ failed to reconcile this conflicting evidence or provide a reason why she seemingly chose to credit the "generally unremarkable" physical examination from November 2015 (Tr. 463) over the November 2016 examination noting much more significant limitations (Tr. 673).[2]

The lack of an explanation is more troubling when considering that the 2015 examination was as part of a follow-up regarding his diabetes and contained no discussion of his back problems other than to note "Back pain" as part of his medical history. (Tr. 457-67.) A "full range of motion" was noted on physical examination, but this was with respect to his neck. (Tr. 465.) His lumbar range of motion does not appear to have been assessed. The November 2016 examination, which noted significant limitations, including "multiple pain behaviors, difficulty finding position of comfort," poor lumbar range of motion, and antalgic gait, was related specifically to his back pain. (Tr. 673-76.) When a claimant is complaining of back pain, it makes little sense to afford more weight to a physician's assessment of the claimant's diabetes, which contained no evaluation of his back pain, than an assessment specifically of the claimant's back pain.

---

[2] The ALJ also stated, "On exam, the claimant had only minimal tenderness to palpation, with no pain behavior, a normal gait and normal range of motion," but did not support this statement with any citation to the record. (Tr. 27.) Therefore, the court cannot assess the basis for this conclusion.

7

In failing to explain this decision, the ALJ erred. *See Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies.")

The ALJ also erred in relying on what she characterized as "conservative" treatment. While some may disagree whether narcotic analgesics and injection therapy can be characterized as "conservative," *see Cunningham v. Colvin*, No. 14-C-420, 2014 U.S. Dist. LEXIS 164005, at *21 (E.D. Wis. Nov. 24, 2014) (citing cases), the error here is not merely semantic. In characterizing the treatment as conservative, the ALJ's implication was that, if Green's impairments were as bad as he alleged, he would have received treatment that was more aggressive than physical therapy, yoga, injections, and opioid pain medication. However, the ALJ did not point to any medical evidence suggesting that more aggressive treatment might be appropriate for a person with Green's condition. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (finding that, in the absence of medical evidence explaining why the claimant had not been prescribed insulin, the ALJ erred in suggesting that the absence of an insulin prescription demonstrated that the claimant's diabetes was not severe). Unlike many claimants complaining of back pain, where surgery is presumed to be an option in severe cases, there is no reason to believe that further surgeries would be appropriate for a person with Green's condition. After all, Green's condition—post laminectomy syndrome—reflects the fact that back surgery was ineffective in addressing his pain.

Therefore, remand is required for the ALJ to reassess the severity of Green's symptoms in accordance with SSR 16-3p, including assessing his activities of daily living and the fact that he relies on narcotic pain relievers, which he reported interfere with his ability to be alert and focused (Tr. 27).

### b. Consideration of Medical Opinions

Green also challenges the "little weight" the ALJ afforded the opinions of Donald Harvey, M.D., and Carrie Voss, APNP. In a questionnaire signed by both, they opined that Green could occasionally lift up to ten pounds, frequently lift five pounds, and stand and sit up to two hours of a workday. (Tr. 328, 536, 742 (the same document appears three times in the record).) Characterizing these opinions as "extreme," the ALJ found them "inconsistent with the claimant's minor deficits[,] conservative management," and a July 2017 X-ray that noted only "[m]ild thoracic spondylosis." (Tr. 28 (citing Tr. 702).)

The ALJ's conclusion that Green's deficits were minor appears to have been based, at least in part, on the ALJ's assessment of Green's symptoms. Consequently, reassessment of the severity of Green's symptoms may require reassessment of the weight afforded to these opinions. Additionally, the ALJ also relied on her conclusion that Green's treatment was conservative to discount these opinions. As explained above, the ALJ failed to identify any medical evidence that the absence of more aggressive treatment tended to suggest that Green's symptoms were not as severe as he alleged.

### c. Mental Limitations

Green further argues that the ALJ erred by failing to consider how his pain affected his ability to concentrate. In conjunction with her explanation of her finding that Green's depression and anxiety were not severe, the ALJ stated, "The undersigned has not found a moderate limitation on concentration, persistence and pace because of this conservative management, and the claimant's normal attention findings on exam." (Tr. 25.) The exhibit she cited in support of this statement was a 2010 fitness for duty evaluation prepared for Green's former employer, which the ALJ then discounted because "these findings are remote to the period at issue." (Tr. 25.) The ALJ then noted treatment records from October of 2017 that she characterized as showing "a depressed mood and decreased range of affect, but otherwise normal findings." (Tr. 25.)

Even if the ALJ appropriately concluded that Green's limitations regarding concentration, persistence, and pace were not at least moderate (and thus Green's depression and anxiety were not severe impairments), the ALJ erred by failing to assess whether Green had *any* limitation in these domains and whether those limitations affected his ability to engage in sustained fulltime employment.

There is significant evidence that Green's concentration would be affected by his pain. To the extent that the ALJ discounted Green's limitation in concentration because she discounted the severity of his alleged pain, reassessment of the severity of his symptoms will require reassessment of whether this pain affected his concentration.

But, independent of that point, the ALJ's failure to consider how pain would affect Green's concentration requires remand.

Even the 2010 fitness for duty report, which the ALJ characterized as showing "normal attention findings," states that Green's pain would impair his ability to work. That report noted that his "[m]emory appears to be within normal limits [and] [c]oncentration is rated average." (Tr. 807.) But the report noted that he had "slight impairment" in various domains, including "[a]bility to maintain attention and concentration for extended periods" and "[a]bility to maintain a high level of alertness." (Tr. 812.) The examiner concluded, "The overall clinical impression during the formal mental status examination is indicative of an individual who is in a great deal of chronic pain and is becoming overwhelmed with the demands of [his job]." (Tr. 807.) The report recommended certain therapies to address these issues. (Tr. 814.)

Psychologist Brian Lukach opined in February of 2013 that Green would have mild to moderate difficulties in maintaining concentration, persistence, and pace. (Tr. 829.) The ALJ afforded this opinion "some great weight" (Tr. 25), a characterization the court has not encountered before and the meaning of which is unclear, but she seems to have discounted the opinion to some degree.

The ALJ seemed to place more weight on an October 2017 record from Lukach, which she stated showed that Green "had a depressed mood and decreased range of affect, but otherwise normal findings." (Tr. 25.) That record from a 45-minute therapy

11

session noted that, at the time of the examination, Green's mental status was generally within normal limits. (Tr. 729.) But there was no indication that Green was suffering severe pain during the session. At a prior session a couple weeks earlier Lukach noted, "Patient's mood symptoms appear to significantly co-vary with his chronic pain and associated level of functioning." (Tr. 731.)

In sum, there is strong evidence that Green's pain affected his mental functioning. The ALJ stated she did not find such limitation to be moderate or worse. However, she failed to offer good reasons for this finding. But even if Green's limitation in this domain was only mild, the ALJ was still required to address it in her RFC assessment and, if supported by the medical evidence, include it in the hypothetical she presented to the vocational expert.

### d. Hypothetical to Vocational Expert

The ALJ concluded that Green "must be permitted to change positions between sitting and standing every 30 minutes." (Tr. 26.) In presenting this limitation to the vocational expert, the ALJ asked the vocational expert to assume that the person would remain on task while changing positions. (Tr. 56.) Green argues that the ALJ erred because whether a person can remain on task while changing positions is a matter for the vocational expert to assess.

Judge Adelman of this court recently noted that whether a sit / stand option will affect the time a person is off task is a matter for the vocational expert to assess. *Pollari v.*

*Berryhill*, No. 18-C-178, 2019 U.S. Dist. LEXIS 10758, at *5 (E.D. Wis. Jan. 23, 2019). Perhaps there may be circumstances where an ALJ, in fulfilling her obligation to assess the medical evidence, may appropriately characterize how a sit/stand option would affect a person's time off-task. But as a general matter it is for the vocational expert to assess whether transitioning between sitting and standing would result in time off task. The ALJ did not explain why the evidence supported a finding that Green would not be off task when transitioning to sitting or standing. Therefore, on remand the ALJ must either explain why she finds Green would not be off task while transitioning to sitting or standing or omit such a caveat from the hypothetical she presents to the vocational expert.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of March, 2020.

WILLIAM E. DUFFIN
U.S. Magistrate Judge